**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORTH EAST MEDICAL SERVICES, INC., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> STATE OF CALIFORNIA DEPARTMENT OF HEALTH AND HUMAN SERVICES; DAVID MAXWELL-JOLLY, Director of California Department of Health Care Services, Health and Human Services Agency, State of California; THE STATE OF CALIFORNIA, <br><br> Defendants-Appellees. | No.   14-16776 <br><br> D.C. No. 4:10-cv-02433-CW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted October 19, 2016
San Francisco, California

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: KLEINFELD and M. SMITH, Circuit Judges, and KRONSTADT,[**] District Judge.

North East Medical Services appeals the district court's decision denying it injunctive and declaratory relief. We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court incorrectly determined that the Eleventh Amendment barred North East's requested relief. We nevertheless affirm on a different ground, as explained below. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994) ("If the result reached by the district court is correct, we will affirm even if the district court relied on an erroneous ground.").

The district court erred by applying the "date of service" test to hold that North East was seeking retrospective monetary relief. Under the date of service test, "whether relief is prospective or retrospective in the Medicaid payment context turns on the date of service, not on the date of payment." Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly, 572 F.3d 644, 661 n.19 (9th Cir. 2009) vacated sub. nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc., 132 S. Ct. 1204 (2012). We used this test in Independent Living Center, 572 F.3d at 660–61, because granting an injunction would have had the practical effect of forcing the state to

_____

[**] The Honorable John A. Kronstadt, United States District Judge for the Central District of California, sitting by designation.

2

pay the health center additional money for services that the center had provided in the past. Other circuits have applied this test when an injunction would require a court to order a state to pay additional money for medical services already rendered. See N.Y.C. Health & Hosps. Corp. v. Perales, 50 F.3d 129, 137 (2d Cir. 1995); Wisc. Hosp. Ass'n v. Reivitz, 820 F.2d 863, 867 (7th Cir. 1987); Kimble v. Solomon, 599 F.2d 599, 604–05 (4th Cir. 1979).

The date of service test does not apply here because North East is not asking for additional reimbursement from California for medical services that it provided in 2008. Rather, it alleges an ongoing violation of federal law, and seeks to enjoin the director of California's health care services from requiring it to disclose its Part D money when settling up for the 2008 fiscal year. Disclosure would enable the state to take money from North East, not (as in Independent Living) North East to take money from the state. If North East thought that it could get more money from California during the annual reconciliation process, it would have no reason not to disclose its Part D funding rather than start this multi-year litigation.

We, however, affirm the district court's order denying equitable relief under the unclean hands doctrine. "The unclean hands doctrine derives from the

equitable maxim that 'he who comes into equity must come with clean hands'" and requires that plaintiffs seeking equitable relief "act[] fairly and without fraud or deceit as to the controversy in issue." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985). Here, North East has acted unfairly to try to reap a windfall. From 2006 through 2008, North East used Option 2, before permanently switching over to Option 1. If North East had started billing under Option 1 as soon as it thought that California was improperly seizing its Part D money rather than waiting three years, it would not have needed to initiate this action. North East now wants to avoid disclosing how much Part D money it got in 2008 in order to retain its Part D money along with the state Medicaid money that it has already received. The unfairness of the nondisclosure, and the apparent absence of any reason for it that would not involve keeping double payments for providing pharmacy services to dual eligibles, bars equitable and declaratory relief.

**AFFIRMED.**

*North East Medical Services, Inc. v. CA-HHS,* 14-16776

KRONSTADT, District Judge, concurring:

I agree with my colleagues that because North East had unclean hands, it is not eligible to receive the equitable relief it requests. That is a sufficient, independent basis to affirm the decision of the district court. I write separately because I also agree with the conclusion of the district court that the claims presented by North East are barred by the Eleventh Amendment. That conclusion is based on my view that the date of service test should be applied in determining the potential liability of a state to make reimbursements under Medicaid.

Under the date of service test, "whether relief is prospective or retrospective in the Medicaid payment context turns on the date of service, not the date of payment." Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly, 572 F.3d 644, 661 n.19 (9th Cir. 2009), vacated on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. California, Inc., 132 S. Ct. 1204 (2012). "Therefore, an order enjoining payment reductions for services that had been delivered . . . is retroactive." Id. The basis for the test is the principle that healthcare providers' "liability accrues -- and therefore any injury due to inadequate reimbursement in the future occurs -- on the date of service." N.Y. City Health & Hosps. Corp. v. Perales, 50 F.3d 129, 136 (2d Cir. 1995). Under the test, any alleged injury to

1

North East would have occurred in 2008, and would not be ongoing.

The date of service test focuses on the question "whether a particular service underlying a claim was reimbursable at a particular rate." Id. at 137. "[T]he rate established for the service provided is the rate applicable on the date of service, regardless of an increase or decrease in that rate at the time the claim is processed." Id. Here, the relief North East requests -- an injunction that would prevent the state from deducting Medicare Part D payments from Medicaid reimbursement to North East -- could result in a retroactive increase in the rate of reimbursement to which the parties had agreed for services that North East provided in 2008.[1]

I agree that North East is not seeking any further accounting or reconciliation processes. However, this is not "a situation in which state officials are being told in effect to leave the plaintiff alone," which is consistent with Ex Parte Young. Wisc. Hosp. Ass'n v. Reivitz, 820 F.2d 863, 867 (7th Cir. 1987). Instead, under the date of service standard, by refusing to participate in the accounting and reconciliation process and seeking to enjoin it, North East is seeking monetary relief from the state. That relief is in the form of any amount that the state paid that exceeded the agreed upon rates for services rendered in 2008,

---

[1]If North East believed that a later reconciliation would not result in a credit to the state for some portion of the payments North East had received for past services, its pursuit of injunctive relief would not make sense.

2

and to which it would be entitled to a credit.  Thus, North East is requesting that the court "order funds paid from the state treasury to provide higher payment for services," which is "beyond [the court's] authority because of the limitation of its power under the Eleventh Amendment." Perales, 50 F.3d at 137; see also Wisc. Hosp. Ass'n, 820 F.2d at 867 (concluding that the Eleventh Amendment barred recovery for hospitals that "rendered services to Medicaid patients for which they want to be paid at a higher rate than the state wants to pay them").

It is of no consequence to the Eleventh Amendment analysis that the payments by the state would be effected through an accounting and reconciliation process in which a retroactive calculation is made of the net amount owed to North East for the many services that it provided during 2008. To hold otherwise would elevate the form of the payment process over its substance. Perales, 50 F. 3d at 133 ("the submission, verification and payment of claims are administrative formalities necessary to receive payment on a liability that has already accrued").